# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DOUGLAS RIGGLE, On Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>AROTECH CORPORATION, JON B. KUTLER, KENNETH W. CAPPELL, LAWRENCE F. HAGENBUCH, and JAMES J. QUINN,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Douglas Riggle ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Arotech Corporation ("Arotech" or the "Company") against Arotech and the members of Arotech's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to Greenbriar Equity Group, L.P. ("Greenbriar") through Argonaut Intermediate, Inc. ("Parent") and Argonaut Merger Sub, Inc. ("Merger Sub").

2. On September 23, 2019, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement"), by which the Company will be acquired by Greenbriar in a deal valued at approximately $80.8 million (the "Proposed Transaction"). Under the terms of the Merger Agreement, each Arotech stockholder will receive $3.00 in cash for each share of Arotech common stock they own (the "Merger Consideration").

3. On October 23, 2019, Arotech filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) Company insiders' potential conflicts of interest; (ii) the Company's financial projections; and (iii) the valuation analyses performed by the financial advisor of the Company, B. Riley FBR, Inc. ("B. Riley"). Accordingly, without this additional information the Proxy is materially misleading in violation of federal securities laws.

4. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation

even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

5. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this

District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Arotech is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Arotech.

10. Defendant Arotech is a Delaware corporation, with its principal executive offices located at 1229 Oak Valley Drive, Ann Arbor, Michigan 48108. Arotech's common stock trades on the NASDAQ Global Select Market under the ticker symbol "ARTX."

11. Defendant Jon B. Kutler ("Kutler") has served as Chairman of the Board since May 2016 and a director of the Company since February 2016.

12. Defendant Kenneth W. Cappell ("Cappell") has served as a director of the Company since May 2015.

13. Defendant Lawrence F. Hagenbuch ("Hagenbuch") has served as a director of the Company since March 2016.

14. Defendant James J. Quinn ("Quinn") has served as a director of the Company since May 2016.

15. Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

16. Relevant non-party Greenbriar is a private equity firm with over $3.5 billion of committed capital focused on investing in market-leading manufacturing and services businesses in partnership with proven management teams. Greenbriar's principal executive offices are located at 555 Theodore Fremd Avenue, Suite A201, Rye, NY 10580.

## CLASS ACTION ALLEGATIONS

17. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Arotech common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

18. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

19. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of October 29, 2019, there were approximately 26,665,240 shares of Company common stock outstanding. All members of the Class may be identified from records maintained by Arotech or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

20. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

    a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

    b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

21. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

22. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

23. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

24. Arotech Corporation is a defense and security company engaged in two business areas: interactive simulation and mobile power systems.

25. Arotech's Training & Simulation Division ("ATSD") develops, manufactures and markets advanced high-tech multimedia and interactive digital solutions for engineering, use-of-force, and operator training simulations used by military, law enforcement, security, municipal and private industry personnel. Arotech's Power Systems Division ("APSD") develops and provides sophisticated portable energy solutions designed to complex and demanding customer specifications for diverse applications from vehicle power, clean energy power generation, power distribution and management, military field equipment to life-vest lights, satellite radios and unmanned vehicles. Arotech's solutions are

produced primarily for military, aerospace and industrial customers.

26. The Company is incorporated in Delaware, with corporate offices in Ann Arbor, Michigan, and research, development and production subsidiaries in Michigan, South Carolina, and Israel.

27. On August 7, 2019, Arotech announced its second quarter 2019 financial results, including revenues of $23.3 million, compared to $21.9 million for the second quarter of 2018. The Company further reported gross profit of $7.6 million, compared to $6.6 million, for the second quarter of 2018, and operating income of $929,000, compared to $562,000 for the second quarter of 2018. Arotech's Chief Executive Officer ("CEO") Dean Krutty commented on the quarter, stating:

> Our second quarter financial results showed expected improvement over the first quarter, as all three of our subsidiaries delivered improved revenues and earnings . . . . We expect continued improvement as the year progresses due to the timing of programs we have under contract, especially as it relates to our large contracts in the Simulation Division.
>
> Our Simulation Division's military vehicle segment has made important progress in the first two quarters toward year end test milestones for the US Army and U.S. Marine Corps programs that will allow us to transition to production and delivery phases. Also within the Simulation Division, we are seeing significant demand for our weapon simulation software in 2019, which further validates this important simulation segment.
>
> The Power Division continues to make progress in selling test quantities of our new lithium based, lead acid replacement batteries. Our batteries are testing well in a variety of applications and we look

forward to our customers transitioning to purchases of production quantities as their confidence grows. In addition, we continue to respond to international tenders for new battery developments that we believe will lead to further diversification in the customer base of our Israeli power subsidiary . . . .

28.    In its August 7, 2019 press release, the Company presented the following highlights for the quarter:

*Training and Simulation Division*

- Is performing well on the Army's simulator maintenance program (ATMP) under subcontract to Lockheed Martin, leading to an extension through June of 2020 in the amount of $2.6 million.

- Successfully delivers on expanding commercial simulator sales to include twelve police systems delivered to the Department of State.

- Received significant new awards for its weapon employment software in support of various U.S. fighter platforms totaling approximately $15.0 million of contract value which is expected to be funded incrementally.

- Continues fielding phase one capability upgrades to the Army's Virtual Clearance Training Suites installations and is proceeding with development of phase two capabilities. Phase two efforts now include a recently awarded change order in the amount of $1.8 million that will add training capability for the Army's new multifunction video display (MVD) to the simulated vehicle crew stations.

*Power Systems Division*

- Completed a successful three week long Mobile Electric Hybrid Power Sources (MEHPS) demonstration for the US Army at the Maneuver Support, Sustainment, and Protection Integration Experiments (MSSPIX) event demonstrating significant fuel savings.

- Provided 6T batteries to the UK MOD for testing with its Armored Trials and Development Unit (ADTU) that was successfully completed, and delivered ten 6T batteries to a company in the UK for certification.

**The Proposed Transaction**

29.   On September 23, 2019, Arotech issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> ANN ARBOR, Mich., Sept. 23, 2019 (GLOBE NEWSWIRE) -- Arotech Corporation (NasdaqGM: ARTX) today announced that it has entered into a definitive agreement with an affiliate of Greenbriar Equity Group, L.P. ("Greenbriar") under which the affiliate will acquire all outstanding shares of Arotech common stock for $3.00 per share in cash, representing an aggregate equity value of approximately $80.8 million.
>
> The $3.00 per share cash consideration represents a premium of approximately 32.7% to Arotech's closing share price on September 20, 2019, the last full trading day before today's announcement. The transaction, which was unanimously approved by Arotech's Board of Directors upon recommendation by a Special Committee of the Board, is expected to close in the first quarter of 2020. Following completion of the transaction, Arotech expects it will remain headquartered in Ann Arbor, MI.
>
> **Transaction Details**
>
> Under the terms of the merger agreement, Arotech's Board of Directors, with the assistance of its financial advisor, will conduct a 30-day "go-shop" process following the date of the announcement of the merger agreement, during which it will actively initiate, solicit, facilitate, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that offer alternative acquisition proposals. Arotech will have the right to terminate the merger agreement to accept a superior proposal, subject to the terms and conditions of the merger agreement. There can be no

assurance that this "go-shop" process will result in a superior proposal or that any other transaction will be approved or completed, and Arotech does not intend to disclose developments with respect to the solicitation process unless and until its Board of Directors makes a determination requiring further disclosure.

The proposed transaction is subject to, among other customary closing conditions, approval by the holders of a majority of the shares of Arotech common stock. There are no financing contingencies contemplated under the terms of the merger agreement. Following completion of the transaction, Arotech will become a privately-held company and shares of Arotech's common stock will no longer be listed on any public market.

**The Proxy Misleads Arotech Stockholders by Omitting Material Information**

30. On October 23, 2019, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning potential conflicts of interest, the Company's financial projections, and the financial analyses of B. Riley.

*Material Omissions Concerning Potential Conflicts of Interest*

31. The Proxy fails to disclose material information concerning the conflicts of interest faced by Arotech insiders.

32. The Proxy fails to disclose whether any members of Arotech management are continuing with the combined company, and the details of any employment and retention-related discussions and negotiations that occurred

between Greenbriar and Arotech executive officers, including who participated in all such communications, when they occurred and their content. The Proxy further fails to disclose whether any of Greenbriar's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

33. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Material Omissions Concerning the Financial Projections*

34. The Proxy omits material information regarding the Company's financial projections provided by Arotech's management and relied upon by B. Riley for its analyses.

35. For example, in connection with B. Riley's *Discounted Cash Flow Analysis ("DCF")*, the Proxy sets forth:

> B. Riley conducted an illustrative discounted cash flow analysis for Arotech on a stand-alone basis. B. Riley calculated a range of implied values of Arotech based on forecasts for calendar years 2019 through 2024 provided by Arotech management. B. Riley first calculated unlevered free cash flows (calculated as net profit after taxes, plus depreciation and amortization, less the amount of any increase or plus

>the amount of any decrease in net working capital and less capital expenditures) of Arotech for calendar years 2020 through 2024. Net profit after taxes was calculated as Adjusted EBITDA less depreciation and amortization, stock-based compensation and taxes.

Proxy at 33. The Proxy, however, fails to set forth the unlevered free cash flows ("UFCFs") that Arotech is projected to generate for calendar years 2019 through 2024 utilized by B. Riley in its *DCF*, as well as the underlying line items, including (i) net profit after taxes; (ii) depreciation and amortization; (iii) stock-based compensation; (iv) taxes; (v) net working capital; and (vi) capital expenditures.

36. Omission of the above-referenced projections renders the financial projections included on page 37 of the Proxy materially incomplete and misleading. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.

### *Material Omissions Concerning B. Riley's Financial Analyses*

37. The Proxy describes B. Riley's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of B. Riley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Arotech's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on B. Riley's

fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

38. With respect to B. Riley's *DCF*, in addition to the UFCFs for calendar years 2019 through 2024, the Proxy fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 14.0% to 16.0%; (ii) the estimated terminal values for Arotech; and (iii) the implied perpetuity growth rates resulting from the analysis.

39. With respect to B. Riley's *Selected Precedent Transactions Analysis* and *Selected Public Company Trading Comparables Analysis*, the Proxy fails to disclose Arotech's Adjusted EBITDA for the LTM period ended June 30, 2019, utilized by B. Riley in the analyses.

40. With respect to B. Riley's *Premiums Paid Analysis*, the Proxy discloses that "[a] total of 1,553 transactions were analyzed, 723 of which involved small-cap transactions (defined as transactions with a deal value of less than $500 million)." *Id.* at 34. While the Proxy sets forth the mean and median premiums observed, the Proxy fails to disclose the low and high premiums observed.

41. Without such undisclosed information, Arotech stockholders cannot evaluate for themselves whether the financial analyses performed by B. Riley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in

connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which B. Riley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

42. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Background of the Merger," "Interests of Certain Persons in the Merger," "Summary of the Company's Projections," and "Opinion of Financial Advisor."

43. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made,

not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial projections utilized by the Company's financial advisor in connection with its financial analyses, the financial analyses performed by the Company's financial advisor, and potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages

inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Arotech within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Arotech, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and,

therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

54. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Arotech's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Arotech, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

F. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 27, 2019                   **WEISSLAW LLP**

                                By  s/ Richard A. Acocelli
                                    Richard A. Acocelli
                                    1500 Broadway, 16th Floor
                                    New York, New York 10036
                                    Tel: (212) 682-3025
                                    Fax: (212) 682-3010
                                    Email: racocelli@weisslawllp.com

                                    *Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*